UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

ALANDA D. HAYES, TDOC # 393590  )
                                )
v.                              )   NO. 2:06-CV-107
                                )
KINGSPORT POLICE DEP'T, CLIFF   )
FERGUSON, OFFICER CRAWFORD,     )
OFFICER CHAMBERS, OFFICER       )
HAMMONDS, and K-9 OFFICER,      )
                                )
    all in their individual     )
    and official capacities.    )

## **MEMORANDUM OPINION**

### **I. Introduction**

State prisoner Alanda D. Hayes filed this *pro se* civil rights action for damages under 42 U.S.C. § 1983 against the Kingsport Police Department and five of its officers, alleging that the officers used unreasonable force in effecting his arrest in 2005. Three defendants were dismissed, and the three remaining defendants—Officers Cliff Ferguson, Tim Crawford, and Kevin Hite [named in the complaint as K-9 Officer]—have filed an unopposed motion for summary judgment, supported by a memorandum brief, excerpts of plaintiff's deposition, and affidavits from nine people, including the three defendants, the three other officers involved in plaintiff's arrest, a Police Department official, a training

officer, and a medical doctor. [Doc. 51, Exhs. 1-10; Doc. 55].[1]

## II. Standard of Review

A motion for summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56©. In considering such a motion, the court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Though the burden of establishing there is no genuine issue of material fact lies upon the moving party, *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n.2 (1986), the nonmoving party cannot rest upon mere allegations or denials in its pleadings, but must go beyond the pleadings and offer "specific facts" to show there is a genuine issue for trial. *Matsushita*, 475 U.S. at 586-87. To defeat a motion for summary judgment and get to a jury, a plaintiff must offer significant probative evidence to support the complaint, *Anderson v. Liberty Lobby*, 477 U.S. 242, 249-50 (1986)—bare contentions will not suffice, *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 581-82 (6th Cir. 1992), nor will a mere scintilla of evidence. *Anderson*, 477 U.S. at 252 (1986). Summary judgment is appropriate if a court concludes that a fair-minded jury could not return a verdict in favor of a plaintiff based on the evidence presented. *Id.*, at 251-52.

---

[1] The affidavit of defendant Officer Tim Crawford was identified only as "Attachment # 3 Exhibit C" in the Court's electronic case filing system.

## III.  Background

These are the facts as plaintiff portrays them in his verified complaint.  On October 28, 2005, plaintiff arrived at the Comfort Inn in Kingsport, Tennessee, where he had arranged to meet a friend.  He knocked on the door of his friend's room and was confronted by defendant officer Cliff Ferguson.  Defendant attempted to pull him into the room, but, because plaintiff had committed no crime and violated no law, he immediately pulled away, taking several steps backward into the motel parking lot.  Defendant Ferguson and other unidentified officers who had been situated in the room then rushed towards plaintiff and began beating and kicking him.  At that point, more officers arrived and they too joined in the beating.  Somehow, the plaintiff broke loose, but was captured by a police dog.  To the merriment of the officers, the canine was allowed to bite the plaintiff's arm and back.  However, when the plaintiff began to choke the canine, the dog was called [off?], and the officers resumed the beating of the nearly-nude plaintiff, who by this time had either shed or lost much of his clothing.  One officer said, "That's enough," the beating stopped, and plaintiff was then subjected to an anal cavity search by defendant Crawford.

Plaintiff was taken to the Emergency Room of a nearby hospital, though not the closest one.  The transporting officer told the doctor and nurse that plaintiff had been resisting arrest and urged them to just clean him up and put a band-aid on the bite marks.  Thereafter, plaintiff was given a rabies shot and some band-aids.  Despite the plaintiff's

insistence that he was experiencing abdominal and urinary pain due to the beating, the officer forced him to walk to the cruiser and took him to jail. After being booked into the jail, plaintiff began passing blood clots through his penis when he urinated. He telephoned his girlfriend and asked her to notify his attorney that he had been beaten, had been denied emergency health service, and was experiencing severe pain. Some thirty to forty minutes later, the Emergency Medical Squad arrived and took him to the hospital, where he was admitted to the trauma unit and told that he had lost his left kidney and had sustained "a "2% trauma" to his right kidney. He suffers sporadically from abdominal pain.

Additional details concerning the incident are supplied in the unopposed affidavit testimony of both the defendant officers and the other officers on the scene and in plaintiff's deposition testimony, which, in some respects, significantly departs from the allegations advanced in the complaint. On October 28, 2005, plaintiff's friend, a guest at the Comfort Inn, using his own cell phone and a pre-arranged code system, called plaintiff, indicated that he wanted to purchase an ounce of crack cocaine and some marijuana from him, and asked plaintiff to deliver the drugs to his room. Unbeknownst to plaintiff, police officers had just executed a search warrant on his friend's room, drugs had been found, and the friend had been arrested. Hoping to receive consideration from the prosecutors with respect to the drug charges, the friend indicated that plaintiff was his supplier, volunteered to contact plaintiff to arrange a drug sale, and did so.

4

Plaintiff arrived at the motel, knocked on the door of his friend's room, and defendant Ferguson opened the door. Plaintiff began quickly stepping back, even though he recognized this defendant and other persons standing in the room as police officers who had arrested him in the past. As plaintiff backed away into the parking lot, defendant grabbed him by the front of his coat, ordered him to stop, placed his arms around him, and, with the assistance of the other officers, including defendant Crawford, put plaintiff on the ground, rolled him over, and tried to restrain his arms behind him with handcuffs.[2] Plaintiff managed to unloosen himself from the officers' grasp, got to his feet, pushed defendant Ferguson into the window of an adjoining room, and "took off running."

Just prior to this, defendant Kevin Hite, the canine officer, was summoned to the motel to assist. When plaintiff ran from the officers, defendant Hite warned him that, unless he stopped, the police dog would be released. Seconds later, police dog "Odus" was deployed and he jumped on plaintiff, biting his left arm. Plaintiff scuffled with the dog for several seconds and, when his request to call off the dog was unsuccessful, he grabbed Odus by the throat and attempted to choke him. The K-9 detached itself from plaintiff's arm. Plaintiff, still holding on to Odus's choke chain, was warned to release the dog. Plaintiff hit

---

[2]In his deposition, plaintiff's description of the incident is that he was punched and kicked in the side by the officers and "somehow ... just kept taking licks in [his] right eye." [Doc. 51, Attach. No. 2, Pl's Dep. at 9]. Original photographs submitted by plaintiff depict him lying in what presumably is a hospital bed, with a swollen upper lip and a blackened *left* eye. [Doc. 25, Original photographs; Doc. 20, Attach. No. 2, Photocopies of the originals].

5

the dog in its face a couple of times, then slung it from him, and resumed running from the officers.

Plaintiff sprang over a fence and slid down an embankment, but before reaching the bottom, the K-9, again in hot pursuit, jumped up, grabbed plaintiff, buried its teeth in plaintiff's arm, and took him to the ground. Defendant Hite retrieved the dog, "kind of kicked [plaintiff] in [his] eye," [*Id*. at 10], and he and defendant Crawford picked plaintiff up by the ankles and shook him. Underneath him lay a quantity of cocaine. At some point, plaintiff was sprayed with pepper spray and subdued. After plaintiff was in handcuffs and under control, he was taken to the hospital, treated for multiple dog bites, released into police custody, taken to jail, taken back to the hospital when he continued to make complaints, admitted, and the next day, released on bond.

Trauma surgeon Stephen Wilson, M.D., has testified by affidavit, that he has reviewed plaintiff's medical records and that they show that plaintiff's left kidney was severely injured in 2003 in a motorcycle accident. In his deposition, plaintiff acknowledged that his left kidney was lacerated in the motorcycle crash. Dr. Wilson also testifies that, in his opinion, the multiple dog bites and scrapes plaintiff sustained prior to his hospital admission in 2005 would not have contributed to the impairment of his kidney function.

Testimony contained in affidavits submitted by some of the Kingsport police officers involved in plaintiff's arrest indicate that an attempt was made to place handcuffs

on plaintiff, that only one handcuff had been attached to plaintiff's wrist before he freed himself from the officers' grasp, and that he swung the unfastened one wildly in his battle with the officers. [Doc. 51, Attach. Nos. 2-7]. Also, according to the affidavit testimony of Cesar Gracia, a former Kingsport police officer who at present is the Police Academy Director at Walters State Community College, the single arm of a handcuff has a sharp point, several serrated teeth, and may be utilized as a weapon, even a deadly weapon, to strike officers.

Finally, as a result of this episode, plaintiff was charged with delivery of over 26 grams of cocaine within 1000 feet of a daycare, delivery of marijuana within 1000 feet of a daycare, resisting arrest, and evading arrest. [Doc. 51, Attach. No. 4, Affidavit of Kevin L. Hite]. Thereafter, he was convicted, pursuant to his guilty pleas, of delivery of over .5 grams of cocaine within 1000 feet of a school, a Class B felony; delivery of marijuana, a Class E felony; resisting arrest, a Class B misdemeanor; and evading arrest, a Class A misdemeanor. [Doc. 37, Pl's Pretrial Narrative Statement, at 25-28]. As will be seen in the discussion to follow, plaintiff's plea of guilty to resisting arrest is especially important in resolving this lawsuit.

### IV. Discussion

Defendants contend that they are entitled to summary judgment because plaintiff has failed state a claim against them in their official capacities and because they enjoy qualified immunity from damages in their individual capacities. The Court will

on plaintiff, that only one handcuff had been attached to plaintiff's wrist before he freed himself from the officers' grasp, and that he swung the unfastened one wildly in his battle with the officers. [Doc. 51, Attach. Nos. 2-7]. Also, according to the affidavit testimony of Cesar Gracia, a former Kingsport police officer who at present is the Police Academy Director at Walters State Community College, the single arm of a handcuff has a sharp point, several serrated teeth, and may be utilized as a weapon, even a deadly weapon, to strike officers.

Finally, as a result of this episode, plaintiff was charged with delivery of over 26 grams of cocaine within 1000 feet of a daycare, delivery of marijuana within 1000 feet of a daycare, resisting arrest, and evading arrest. [Doc. 51, Attach. No. 4, Affidavit of Kevin L. Hite]. Thereafter, he was convicted, pursuant to his guilty pleas, of delivery of over .5 grams of cocaine within 1000 feet of a school, a Class B felony; delivery of marijuana, a Class E felony; resisting arrest, a Class B misdemeanor; and evading arrest, a Class A misdemeanor. [Doc. 37, Pl's Pretrial Narrative Statement, at 25-28]. As will be seen in the discussion to follow, plaintiff's plea of guilty to resisting arrest is especially important in resolving this lawsuit.

### IV. Discussion

Defendants contend that they are entitled to summary judgment because plaintiff has failed state a claim against them in their official capacities and because they enjoy qualified immunity from damages in their individual capacities. The Court will

**GRANT** the motion, but on a different basis.

Under the rule announced in *Heck v. Humphrey*, 512 U.S. 477 (1994), if a judgment in favor of the plaintiff would necessarily imply the invalidity of his state court conviction or sentence, his § 1983 complaint for damages must be dismissed, unless he can demonstrate that the conviction or sentence has already been invalidated. Thus, if plaintiff's success on his excessive force claim "would necessarily imply the invalidity" of his prior convictions for resisting arrest, then *Heck* bars him from advancing this excessive force claim. *Id.*, at 487.

The law in Tennessee is that an officer's use of pre-resistance excessive force is a statutory defense to the crime of resisting arrest. Tenn. Code Ann. § 39-11-611(e)[3]; *State v. Tidwell*, No. 01C01-9807-CC-00288, 1999 WL 436840, at *3 (Tenn. Crim. App. June 30, 1999) ("The legality of the arrest is not relevant to the determination of whether the

---

[3] The threat or use of force against another is not justified to resist ...arrest ...that the person knows is being made by a law enforcement officer, unless:

(1) The law enforcement officer uses or attempts to use greater force than necessary to make the arrest...; and

(2) The person reasonably believes that the force is immediately necessary to protect against the law enforcement officer's use or attempted use of greater force than necessary.

Tenn. Code Ann. § 39-11-611(e).

defendant committed the offense of resisting arrest, unless the defendant is claiming self defense against excessive force from officers."). In *Roberts v. Anderson*, No. 05-6828, 2007 WL 79057, at *6 (6th Cir. Jan. 9, 2007), the Sixth Circuit observed that, "under Tennessee law, an officer's excessive use of force is a defense to a charge of resisting or evading arrest; thus, a guilty plea and resultant conviction of such a charge necessarily includes a finding that the officer did not use excessive force."

Plaintiff could have and should have raised his excessive force claim to defend against the resisting-arrest charge, rather than to plead guilty to the charge in state court and then to come to this federal forum to assert his claim of excessive force. *See, e.g., Cummings v. City of Akron,* 418 F.3d 676, 683 (6th Cir.2005) ( "[Plaintiff] could have raised excessive force as a defense to the assault charge, but instead he chose not to contest the charge. Thus, we hold that *Heck* bars [Plaintiff]'s excessive force claim from moving forward ...."). Undoubtedly, if plaintiff were to prevail in this Court on his claim that he was subjected to excessive force during his arrest, this would connote that his state court conviction for resisting arrest was invalid. Plaintiff has not shown that his conviction for resisting arrest has been vacated, set aside or other invalidated, and, until he does, *Heck* bars his claims of excessive force during his arrest.

IV. **Conclusion**

The Court has viewed the evidence in the light most favorable to plaintiff and

9

now finds there is no genuine issue of material fact as to the viability of his excessive-force claims at this time and that defendants are entitled to summary judgment as a matter of law. Therefore, their summary judgment motion will be **GRANTED** and this case **DISMISSED,** without prejudice to plaintiff's right to re-file if and when his state court conviction for resisting arrest has been invalidated.

A separate order will enter.


**ENTER**:

s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE